IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JASON KLEIN, *et al.*,         )
                                 )
      Plaintiffs,             )
                                 )
     v.                      )      Case No. 1:12-cv-757 (GBL/IDD)
                                 )
VERIZON COMMUNICATIONS, INC., *et al.*,)
                                 )
      Defendants.          )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Verizon Communications, Inc.,

Verizon Online LLC, and Verizon Online-Maryland LLC's (collectively, "Verizon's") Motion to

Compel Arbitration, or in the alternative, Motion to Dismiss. (Dkt. No. 11.) This case concerns

the validity of a communications services provider's contract provision assessing an early

termination fee to a customer's account. Plaintiff Jason Klein ("Klein") brings this action

against Verizon, alleging violations of Virginia's Consumer Protection Act due to Verizon

assessing an early termination fee against his account because he canceled his internet service

before the expiration of his one-year contract term.

There are four issues before the Court. The first issue is whether Verizon's Rule 68 Offer

of Judgment, made prior to Klein filing a motion for class certification, moots both Klein's

individual and putative class claims. The Court holds that Defendants' offer to provide Klein

with all available remedies in accordance with Rule 68 does not remove Klein's individual stake,

where, as here, a class complaint has been filed and the Court has yet to rule on class

certification. If, in such a case, a plaintiff timely files a motion to certify the class, the Court

should relate back the motion to the date the complaint was filed. Accordingly, the offer of judgment does not necessarily moot the putative class claims.

The second issue is whether an arbitration clause embedded in an email as a contract modification is enforceable against Klein where Klein simply continued using Verizon's service without taking any affirmative action to demonstrate acceptance of the contract modification when Klein previously agreed to such mode of acceptance. The Court holds the arbitration clause is valid because the parties' initial agreement explicitly provided that continued use of the service after receipt of contract modification received via email is sufficient consent to contract modifications. Therefore, Klein accepted the proposed contract modifications, including the arbitration provision, by his continued use of Verizon's services after receiving notice of the contract modification via email.

The third issue is whether Verizon's arbitration clause applies retroactively to disputes between the parties occurring prior to the contract modification. The Court holds that, where an arbitration clause indicates its applicability to "any dispute" between the parties, such broad language sufficiently encompasses past and present disputes. Therefore, the arbitration clause in this case applies even to those disputes arising before the modification.

The fourth issue is whether the arbitration clause is unenforceable due to both procedural and substantive unconscionability. The Court holds that the arbitration clause does not demonstrate both procedural and substantive unconscionability for two reasons. First, Klein fails to show substantive unconscionability where he only suggests hypothetical situations, an insufficient basis upon which to invalidate contract terms, and he fails to identify a provision that can be considered illegal or contrary to public policy. Second, the Court also finds that the arbitration clause is not procedurally unconscionable because Klein had other meaningful

choices for the contracted services and Verizon gave proper notice in accordance with the agreement between the parties.

## I. BACKGROUND

### A. Plaintiff's Verizon Service

Plaintiff Jason Klein ordered Verizon High Speed Internet ("HSI") online as part of the Double Freedom Bundled Services in October 2010. (Compl. ¶ 31, Dkt. No. 1.) Plaintiff is a citizen of Maryland and receives these HSI and telephone services at his home in Baltimore, Maryland. (*Id.* ¶¶ 5, 31.)

To initiate service as a Verizon Bundled Services customer, Verizon required Klein to agree to the standardized Verizon Online Terms of Service ("TOS"). (Compl. ¶ 33, Ex. A.) As part of the agreement, Klein agreed to a provision that if he were to choose to terminate telephone, Internet, or both services "between months 2 and 12," an early termination fee ("ETF") would be applied and the discount on any remaining service would be discontinued. (Compl. ¶ 35.) After ordering and receiving the Verizon Bundled Services, Klein encountered significant billing issues and Internet connectivity problems. (*Id.* ¶ 37.)

Klein canceled his service after two full months of service. (*Id.*) As a result, Verizon charged him a $135 ETF. (*Id.*) In May 2011, Klein, after considering options provided by Verizon's competitors, subscribed to Verizon again. (*Id.* ¶ 38.) As before, service initiation required Klein's agreement to the Verizon Online TOS. (*Id.* ¶ 39.) As of the date of his Complaint, Klein continued to use Verizon's service. (Compl. ¶ 40.)

**B. Verizon's Online Terms of Service Agreement and Arbitration Provision**

Klein agreed to Verizon's TOS in both October 2010 (the "October 2010 Agreement") and May 2011 (the "May 2011 Agreement").[1] (Compl. ¶¶ 31, 33, 39, Exs. A, B.) These agreements provided for both conditions of service and any future modifications to the terms. (*See* Compl. Ex. A § 1; Ex. B § 1.) Verizon committed to providing notice of revisions "by posting revisions to the Website Announcements page, or sending an email to the email address [customers] provide to receive communications." (Compl. Ex. A § 3; Ex. B § 3 (including a nearly identical clause but specifying that a "Primary Email Address" would be used to receive communications)). Under both the October 2010 and May 2011 Agreements, Verizon's TOS established that "the substantive laws of the Commonwealth of Virginia" would apply to any dispute. (Compl. Ex. A § 15.4; Ex. B § 15.4.)

On June 20, 2012, Verizon proposed contract modifications to the customer agreement (the "Current Customer Agreement") pursuant to the above guidelines and sent these modifications to Klein. (Walker Decl. ¶ 5, Ex. 3, Dkt. No. 14.) Verizon's records demonstrated that on July 10, 2012, Klein received and opened this email, sent from Verizon to Klein's primary email address, containing a notice of the revised terms of the Current Customer Agreement.[2] (Walker Decl. ¶¶ 5-6.) Verizon's email to Klein explained that "[t]he terms now

---

[1] For the purposes of this Opinion, the Court refers to these agreements using the month in which Klein agreed to the terms. The first agreement is termed "the October 2010 Agreement" because Plaintiff does not indicate whether he agreed to the TOS at the time he ordered the service— October 2010—or when the service commenced—November 2010. (*See* Compl. ¶¶ 31, 33.) However, Exhibits A and B, attached to the Complaint, reference July 26, 2009 and April 19, 2011, respectively. Plaintiff explains that these exhibits, despite the differing dates, are the terms to which he agreed in 2010 and 2011. (Compl. ¶¶ 33, 39; Klein Decl. ¶¶ 5, 12, Dkt. No. 29.)

[2] Although Klein argues that "there is no evidence [he] actually read the new terms" in the 2012 modification, (Pl.'s Opp'n at 14, Dkt. No. 29) Plaintiff never expressly states that he did not receive or open the email or otherwise directly refute Verizon's argument. (*Cf.* Pl.'s Opp'n at 13

4

require that you and Verizon resolve disputes only by arbitration or in small claims court" and provided links to more information about Verizon's dispute resolution procedures as well as the full terms of the Current Customer Agreement.[3] (Walker Decl., Ex. 2.) The Current Customer Agreement further specifies "the Federal Arbitration Act and the substantive laws of the state of the customer's billing address . . . will be applied to govern, construe, and enforce all of the rights and duties of the parties *arising from or relating in any way to the subject matter of this Agreement*." (Walker Decl., Ex. 3 § 15.4 (emphasis added)).[4] The email in which the agreement was sent stated that "[b]y continuing to use the services after the date of this notice, [customers] accept and agree to abide by the revised terms." (Walker Decl., Ex. 2.) Finally, the Current Customer Agreement states that it "supersedes any and all prior or contemporaneous agreements," both written and oral. (Walker Decl., Ex. 3 § 15.7.)

## C. Klein's Complaint

Klein, serving as the putative named representative, filed this class action on July 11, 2012. (Compl. ¶¶ 1, 52.) Klein's sole claim for relief is predicated on Section 59.1-200(A)(13) of the Virginia Consumer Protection Act ("VCPA"), which prohibits a "liquidated damage clause" or "penalty clause" that is "void or unenforceable under any otherwise applicable laws of the Commonwealth, or under federal statutes or regulations." (*Id.* ¶ 63.) Klein asserts that

(arguing the issue of affirmative assent to the terms while observing that "[Klein] did not even receive notice of the terms until they already purported to apply to him.").)

[3] The Court accepts the veracity of this exhibit because Klein's brief cites this exhibit and does not dispute the accuracy of the terms therein. (*See* Pl.'s Opp'n at 17.)

[4] Although this document is submitted by Verizon, Klein cites to this exhibit and the terms therein as the actual terms at issue in this dispute. (*See* Pl.'s Opp'n at 6, 12, 16, 17 and n.2.) Thus, the Court accepts the terms presented in Defendants' exhibit to be true and accurate except where Klein specifically identifies an inconsequential difference. (*See* Pl.'s Opp'n at 6 (identifying a difference in the definition of the appropriate the email address used for notice of modifications).)

Verizon engaged in a prohibited practice by "using in a contract and by collecting liquidated damages that are unenforceable under the common law." (*Id.*)

## D. Verizon's Offer of Judgment

After being served with Klein's Complaint and conducting its own investigation, Verizon refunded Klein the $135 ETF at issue in this action. (Defs.' Mem. Supp. Mot. Compel Arbitration, Mot. Dismiss at 1, 2, 4, 7, Dkt. No. 11; Simpson Decl. ¶ 8, Dkt. No. 13.) On August 16, 2012, Verizon notified Klein that the ETF had been refunded and served Klein's counsel with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. (*See* Defs.' Mem. Supp. Mot. Compel Arbitration, Mot. Dismiss, Ex. A.)

In its Offer of Judgment, Verizon "offer[ed] to allow a judgment to be taken against Verizon in favor of Plaintiff Jason Klein in the amount of $1,000.00 together with the costs Plaintiff has incurred to date, including Plaintiff's reasonable attorney's fees as the Court determines on petition of Plaintiff." (*Id.*) On August 30, 2012, Klein rejected Verizon's Offer of Judgment and indicated his intention to pursue his VCPA claim. (*See* Defs.' Mem. Supp. Mot. Compel Arbitration, Mot. Dismiss, Ex. B.)

On September 10, 2012, Defendants filed this Motion to Compel Arbitration or, in the alternative, Motion to Dismiss, asserting three grounds. (Dkt. No. 11.) First, Defendants argue that the arbitration provisions of the Current Customer Agreement govern the dispute and thus deprive the Court of subject matter jurisdiction in this action. Second, Defendants argue that Klein's individual and putative class claims were mooted upon refusing a Rule 68 Offer of Judgment. Third, Defendants maintain that Plaintiffs' Complaint fails to state a claim because the ETF is a valid means of alternative contract performance.

## II. STANDARD OF REVIEW

### 1. Rule 12(b)(1) Motion to Dismiss

Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

The Federal Rules of Civil Procedure allow a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)); *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the trial court's "very power to hear the case" is at issue. *Adams*, 697 F.2d at 1219. The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Id.* at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### 2. *Motion to Compel Arbitration*

Federal law controls the interpretation of arbitration agreements, even where a contract includes a choice of law provision. *Smith Barmy, Inc., v. Critical Health Sys. of North Carolina, Inc.*, 212 F.3d 858, 861 n.1 (4th Cir. 2000). Federal law strongly favors arbitration, and ambiguities as to the scope of an arbitration clause should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). When faced with a valid arbitration clause, the court must order arbitration unless it is clear that the arbitration clause cannot be reasonably interpreted to cover the dispute. *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001).

## III. DISCUSSION

The Court grants Defendants' Motion to Compel Arbitration because the arbitration clause arose from a valid contract modification and the contract is not unconscionable. To reach this conclusion, the Court finds, as an initial matter, that Klein has standing to bring these claims because the Offer of Judgment does not moot Klein's claims under these facts. In analyzing the Motion to Compel Arbitration, the Court finds that, under Maryland law, Klein's silence and continued use of Verizon's services sufficiently assented to the modifications and the provision is neither procedurally nor substantively unconscionable. Because the arbitration provision is valid and enforceable, the Court finds no need to examine whether the Complaint sufficiently states a claim.

### A. Subject-Matter Jurisdiction (Article III Standing)

As a threshold matter, the Court must address the issue of subject matter jurisdiction to determine if it has the power to hear this case and rule on the subsequent motions. In doing so,

the Court finds that Klein's claims are not moot and thus he has Article III standing. Accordingly, the Court denies the Motion to Dismiss for a lack of subject matter jurisdiction.

The Constitution restricts the jurisdiction of federal courts to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. When the issues presented are no longer "live" or the parties lack a cognizable interest in the outcome, the case is moot. *Kensington Physical Therapy v. Jackson Therapy*, No. 8:11-CV-02467, 2012 WL 3090297, at *3 (D. Md. July 30, 2012) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). When a defendant presents a Rule 68 offer of judgment to a plaintiff, the offer may in certain circumstances render a case moot. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012). Where relatively little time passes between filing a class complaint and a Rule 68 offer of judgment so that the named plaintiff has not yet moved for class certification, and where the maximum statutory fine is relatively small—thus making the claim susceptible to "pick-off" attempts—the "relation back" doctrine will apply and defeat claims of mootness. *See Kensington*, 2012 WL 3090297, at *5.

The issue of standing presents two sub-issues for the Court to address: (i) whether Verizon's settlement offer is complete, and (ii) if the settlement offer is complete, whether an exception to the mootness rule applies in the context of this case (i.e., where the class representative's claim otherwise becomes moot before it has moved for class certification). Because Klein does not challenge the adequacy or completeness of Verizon's offer, the Court will proceed with the assumption that it is to determine the second issue of whether a complete settlement offer moots the claim at issue.

The Court finds that receipt of a Rule 68 offer of judgment before a motion on class certification does not moot Klein's claims in this case. The Fourth Circuit has not addressed the

issue in the specific context of plaintiffs who receive offers prior to any motion or ruling upon class certification. *See Kensington*, 2012 WL 3090297, at *4 (noting the absence of "controlling Fourth Circuit precedent on [the] question" of mootness where "no certification motion is pending" and defendant argued "the complete settlement offer mooted Kensington's claim").

The Fifth Circuit has addressed this situation using the "relation back" doctrine to allow a timely filed motion to certify the class to defeat a defendant's claims of mootness. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-22 (5th Cir. 2008). In *Sandoz*, the defendant made an offer of judgment one month after receiving the class complaint. *Id.* at 921. The court noted the dangers of allowing a defendant to "pick off" class representatives by intentionally mooting the named plaintiff's claims through a Rule 68 offer of judgment. *Id.* at 920. Relying on the Third Circuit's decision in *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), the Fifth Circuit concluded that "[a]bsent undue delay in filing a motion for class certification...where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." *Id.* at 920-21 (quoting *Weiss*, 385 F.3d at 348). Although *Sandoz* addressed claims presented pursuant to the Federal Labor Standards Act, the Fifth Circuit later joined *Weiss* in applying this doctrine to Rule 23 class actions as well. *See Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 422 & n.2 (5th Cir. 2010) (explaining *Sandoz* and finding it "instructive" in the Rule 23 class action context even though *Sandoz* involved a Federal Labor Standards Act collective action).

The majority of other circuits that have addressed this situation employ the relation back doctrine as stated in *Sandoz*. *Compare Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 198-201 (3d Cir. 2011) (relying on *Weiss* and *Sandoz* to establish that the doctrine applies to

10

both class actions and FLSA claims); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011) (holding that "a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion"); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011) (holding that "an unaccepted Rule 68 offer of judgment," made before a class certification motion and for the full amount of the individual claim, "does not moot a class action" so long as the "named plaintiff can still file a timely motion for class certification," which the court could then "[relate] back to the filing on the complaint") *with Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) (finding "the exception created by [*Sandoz, Weiss, Lucero*, and *Pitts*] unnecessary" because "a simple solution to the buy-off problem" is for class plaintiffs "to move to certify their class at the same time that they file their complaint").

Klein's circumstance presents a situation very similar to that in *Sandoz*. Klein instituted this action on July 11, 2012 and received Defendants' Rule 68 Offer August 16, 2012—little more than one month after filing the class complaint. Accordingly, before rendering Klein's claims moot, the Court will apply the relation back doctrine and permit a timely filed motion to certify the class. In assessing when such a motion is timely, the *Sandoz* court noted that periods longer than one month could be timely. *Sandoz*, 553 F.3d at 921 (citing *Schaake v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 108, 112 (S.D.N.Y. 2001)) (opining that an offer of judgment made "about a month after receiving [plaintiff's] complaint" is "the precise scenario in which the relation back doctrine would be appropriate"). However, the Fifth Circuit ultimately abstained from determining the issue, choosing instead to remand the case for the lower court to determine

the timeliness of a certification motion filed thirteen months after the complaint. *Id.* Without a pending motion for class certification here, the Court cannot determine the timeliness of such a motion. However, in light of *Sandoz* and *Schaake*, the Court will not necessarily consider Klein's claim moot simply because Verizon made a Rule 68 Offer of Judgment thirty-six days after Klein filed the class complaint.

Verizon's reliance on Fourth Circuit case law fails because those cases present scenarios where the putative class plaintiff received a Rule 68 offer after a motion on certification had been filed or denied. The court in *Clay v. Miller*, 626 F.2d 345 (4th Cir. 1980), addressed a situation where class certification was previously denied. *Id.* at 347. In *Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986), the denial of class certification occurred *prior* to the defendant's offer of judgment. *Id.* at 388, 390 (emphasis added). As noted above, the Fourth Circuit has not addressed the narrow issue raised here of whether an offer of judgment before a motion on class certification renders the case moot. Therefore, the Court finds the decisions of the Third Circuit, Fifth Circuit and our sister court in *Kensington* persuasive on this issue.

For these reasons, the Court denies Defendant's Motion to Dismiss and holds that Klein's claim survives mootness related to the Rule 68 Offer of Judgment for the same reasons emphasized in the Fifth Circuit's explanation of the relation back doctrine.

## B. Motion to Compel Arbitration

The Court grants Defendants' Motion to Compel Arbitration because (1) a valid agreement existed between the parties and included the modified arbitration provision, (2) the arbitration provision applies to this particular dispute retroactively, and (3) the arbitration agreement was not unconscionable.

In the Fourth Circuit, a party moving to compel arbitration pursuant to the Federal Arbitration Act must demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision that purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the [plaintiff] to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). A district court must grant a motion to compel arbitration where a valid arbitration clause exists and the issues in a case fall within the purview of such a clause. *Id.* at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).

The first, third, and fourth factors are not in dispute here. First, Klein's Complaint clearly evinces a dispute between the parties. Regarding the third factor, telephone and internet services are considered instrumentalities of interstate commerce. *See, e.g.*, *PSINET, Inc. v. Chapman*, 362 F.3d 227, 239 (4th Cir. 2004). Finally, Klein has refused to submit to arbitration, satisfying the fourth element of the test. Thus, Klein must be compelled to arbitrate only if the Court determines (1) the existence of a valid written agreement containing an arbitration provision (2) that purports to cover the dispute.

The Parties do not dispute that they entered into the October 2010 Agreement and March 2011 Agreement. However, in June 2011, Verizon proposed modifications to the October 2010 Agreement by sending an email to Klein's email address with proposed changes. Klein claims that he did not assent to the modifications. Thus, the Court must determine the validity of the contract modifications as they apply to the agreement between the parties.

### 1. Validity of Contract Modifications

Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins*, 303 F.3d at 501 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Traditional contract principles determine the governing law by looking to the place of contracting. *See Keco Indus., Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir. 1963) (citing Restatement of Conflict of Laws § 326 (1934)). The threshold inquiry, therefore, is where the last act necessary to complete the contracts occurred, and thus, where the contract between parties was formed. *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 934 (E.D. Va. 1998), *aff'd*, 182 F.3d 909 (4th Cir. 1999).

Maryland law will control interpretations of the email contract modification validity here because the last act necessary to create the contract took place in Maryland. Klein is a resident of Maryland and receives Verizon's services at his home in Maryland. Klein's assent to Verizon's Online TOS represented the last act necessary to complete the contract. This affirmative act took place in Maryland. Therefore, Maryland law will determine whether the parties agreed to arbitrate.

### 2. Sufficiency of Continued Use of Services to Assent to Contract Modifications

The Court finds that Klein sufficiently assented to the terms because the previous agreement between the parties contained a clause allowing for contract modification assent through continued usage of Verizon's services and Klein continued to use Verizon's services after receiving email notification of the proposed modifications.

To determine whether parties are bound to contractual modifications in the Internet context, courts use traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement. *CoStar Realty Info. v. Field*,

612 F. Supp. 2d 660, 669 (D. Md. 2009) (citation omitted). Silence or inaction upon receipt of an offer may constitute acceptance, but this is the exception and not the general rule. *Int'l Bhd. of Teamsters v. Willis Conrroon Corp.*, 802 A.2d 1050, 1058 n.3 (Md. 2002); *cf. GEICO v. Med. Serv.*, 589 A.2d 464, 468-69 (Md. 1991) (silence and inaction can operate as an acceptance of an offer in a few limited circumstances). Silence is generally not to be considered an acceptance of an offer unless (1) the parties had agreed previously that silence would be an acceptance, (2) the offeree has taken the benefit of the offer, or (3) because of previous dealings between the parties, it is reasonable that the offeree should notify the offeror if the offeree does not intend to accept. *See Attorney Griev. Comm'n v. McIntire*, 405 A.2d 273, 277 (Md. 1979); Joseph M. Perillo, Corbin on Contracts § 3.21, p. 416 (Rev. ed. 1993). *See also* Restatement (Second) of Contracts § 69 (1981) (identifying the three elements for acceptance by silence).

The facts before the Court demonstrate Klein's continued use of services after notice of the contract modification assented to the contractual modifications because the terms of the agreement between the parties explicitly provided that continued use of services after notice of a contract modification is sufficient to assent to any modifications. Both Verizon's October 2010 and May 2011 TOS agreements state that customers accept and agree to abide by contractual modifications by continuing to use the HSI and phone service after revisions are effective. (Compl. Exs. A § 3, B § 3.) In the email proposing the addition of the arbitration clause, Verizon reiterated this point, explaining that "[b]y continuing to use the services after this notice, [customers] accept and agree to abide by the revised terms." (Walker Decl. Ex. A.) Verizon asserts that Klein opened the email on July 10, 2012. (Walker Decl. ¶ 6.) At no point does Klein expressly refute Verizon's contentions regarding Klein's receipt on this date, nor does he provide any indication that he objected to the modifications at any time prior to submitting his

Opposition to this Motion. Additionally, the Court finds unpersuasive Klein's reliance on non-Maryland state court decisions regarding acceptance by continued use of services because this issue is one within the purview of Maryland's application of contract modification.

Because the Parties previously agreed that continued use of services sufficiently inferred consent to contract modifications, the Court holds that Klein's continued use of Verizon's services after he received the proposed modifications is assent to the proposed contract terms, including the arbitration provision.

### 3. Retroactivity of the Arbitration Clause

The Court holds that the arbitration clause retroactively applies to the parties' disputes predating the clause because the broad language of the clause demonstrates intent for contract modifications to apply retroactively.

Contracts must be read "as a whole." *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005). Ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration. *Adkins*, 303 F.3d at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). Courts generally read broad language governing "any dispute" to apply retroactively, especially when combined with language referring to all dealings between the parties. *Levin v. Alms Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) (citing *Cara's Notions v. Hallmark Cards*, 140 F.3d 566, 568 (4th Cir. 1998)).

The Court holds that the broad language at issue provides for retroactive application of the modifications, including the arbitration clause. The arbitration clause purports to cover "any dispute that in any way relates to or arises out of this agreement or from any equipment, products[,] and services [a customer] receive[s] from [Verizon]." (Walker Decl., Ex. 3 § 18.1.) Applying *Levin*'s view on expansive phraseology, the broad language here is read to encompass

16

all agreements between the parties and any disputes, past and present. Such a reading is bolstered by the presumption in favor of arbitration, particularly where such clauses are broadly worded. *See Levin*, 634 F.3d at 267 (reasoning that, based on their decision to use the expansive phrase "any dispute," the parties agreed to arbitrate disputes that arose years before they entered the arbitration agreement); *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)) (finding the presumption favoring arbitration "particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract'").

Furthermore, the Court finds that the language of the proposed modifications, serving as an amendment to the pre-existing agreement, demonstrates the intent for retroactivity. *Levin* identified as "relevant a separate section of the agreement that stated '[t]his agreement supersedes all prior oral or written representations and constitutes the entire understanding.'" 634 F.3d at 267 (quoting *Cara's Notions*, 140 F.3d at 570). The proposed modifications before the Court state that the Current Customer Agreement "supersede[d] any and all prior or contemporaneous agreements whether written or oral," which the Court understands to encompass the October 2010 Agreement and the March 2011 Agreement. (Walker Decl., Ex. 3 § 15.7.) Reading the contract as a whole, the Court considers such a provision to favor retroactive application of the arbitration agreement. The broad language of the arbitration clause in addition to the integration clause demonstrates the parties' understanding that disputes arising under both the October 2010 and March 2011 Agreements, as well as present and future disputes between the Parties, would be resolved through arbitration or small claims courts. As noted in *Levin*, a broad arbitration clause devoid of language indicating a limitation will not be judicially

construed to impose limitation on retroactivity. 634 F.3d at 268 (distinguishing cases not applying retroactivity because "the limitation in [those cases] inhered in the arbitration clause itself," whereas "nothing in the language or structure of the [provision at issue] indicates [intent] to limit or qualify the [arbitration provision] in any way"). Therefore, the Court will retroactively apply the arbitration clause in the July 2012 modification so long as the clause is not unconscionable.

### 4. Unconscionability of the Arbitration Clause

The Court holds that the arbitration clause is neither procedurally nor substantively unconscionable because the clause is not unreasonably harsh, against public policy, or illegal, nor did the modification present a lack of meaningful choice for Klein in his decision to accept or reject the clause.

An arbitration provision is void if it is unconscionable. *Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. Ct. Spec. App. 2010), *cert. denied,* 997 A.2d 790 (Md. 2010) (citing *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005)). The narrow doctrine of unconscionability applies to contracts into which no reasonable person would enter. *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). Contract provisions may be either substantively unconscionable or procedurally unconscionable. Williston on Contracts, § 18:10 (4th ed. 2012). Maryland law requires both procedural and substantive unconscionability to invalidate a contractual term as unconscionable. *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. Spec. App. 2007) (citing *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 555 (Md. 2006)).

### a. Substantive Unconscionability

Substantively unconscionable terms "unreasonably [favor] the more powerful party," "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy," "attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law," or are otherwise "unreasonably and unexpectedly harsh." *Walther*, 872 A.2d at 744. In determining the threshold of imbalance, courts "will not simply excise or ignore terms merely because, in the given case, they may operate to the perceived detriment of the weaker party." *Walther*, 872 A.2d at 746 (quoting *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990)).

Here, Klein fails to proffer any specific provisions of the arbitration clause as unreasonably harsh, against public policy, or illegal. Instead, Klein argues that Verizon's right to amend the arbitration provision in the future makes that provision substantively unconscionable, specifically because Verizon has not exempted ongoing proceedings from its right to amend. Klein claims that Verizon could choose to change the rights and procedures of arbitration, which is inherently unfair. This type of purely conjectural and hypothetical argument is insufficient to invalidate an entire arbitration provision. *See Freedman*, 988 A.2d at 87 (holding that a customer service agreement's arbitration provision was not substantively unconscionable where appellant argued that appellee could arbitrarily decide, at the conclusion of arbitration, that the arbitrator had violated rules, and therefore perpetually avoid any award for appellant, when that contention was only speculative). Klein must do more than warn of a potential problem—he must show an identifiable issue that evinces unreasonable favor to the more powerful party. *Id.* at 87-88. Because he failed to do so, the Court holds that the arbitration clause is not substantively unconscionable.

Because Maryland requires both substantive and procedural unconscionability to invalidate a contract term, the arbitration provision should be enforced because it is not substantively unconscionable. Nonetheless, the Court will also address procedural unconscionability.

### b. Procedural Unconscionability

Procedural unconscionability addresses the process of making a contract, in what has been termed as essentially "bargaining naughtiness." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir. 1989) (quoting James J. White & Robert S. Summers, Uniform Commercial Code § 4-3, at 186 (3d ed. 1988)). Procedural unconscionability bears resemblance to fraud or duress in contract formation. *Id.* The concept includes concerns regarding the use of "fine print and convoluted or unclear language," "deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms," and "one party's lack of meaningful choice." *Walther*, 872 A.2d at 743. A contract of adhesion is not automatically deemed *per se* unconscionable; instead, a court will examine the facts with special care. *Id.* at 746.

The Court finds unpersuasive Klein's argument that the arbitration provision is an adhesion contract. A contract of adhesion has been defined as one "that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Walther*, 872 A.2d at 746 (citing Restatement (Second) of Conflict of Laws § 187 cmt. b (1971)). This fact alone, however, does not automatically make a contract procedurally unconscionable, as the Court must consider whether the terms are oppressive, present an unfair surprise, or impose "an egregious imbalance in the obligation and rights" at issue. *Id.* at 746-47.

Meaningful choice will defeat claims of procedural unconscionability. In *Freedman*, the Maryland Court of Special Appeals found that the appellant's meaningful choice rendered unnecessary the need to examine the parties' relative bargaining power to determine whether an arbitration provision was a contract of adhesion. 988 A.2d at 86. The court noted that the contract amendment included a "clear and conspicuous (and convenient) opt-out provision, so that the term was not offered on a 'take-it-or-leave-it' basis." *Id.*

Similarly, Verizon presented to Klein a clear opt-out provision, permitting the user to reject changes by discontinuing the service, so that the term was not offered on a "take-it-or-leave-it" basis. Klein could have suspended or canceled his service to avoid submitting to the arbitration clause. Klein's argument that he had no real choice because he could not find a replacement for these "essential services" is unpersuasive. Klein had the option to switch to another service provider and, although the Internet is an important modern convenience, Klein's lack of service while searching for a replacement does not present the kind of "take-it-or-leave-it" situation necessary to void a contract clause. Therefore, the Court rejects Klein's claims of procedural unconscionability.

The Court also finds procedural unconscionability lacking here because of the manner in which Verizon apprised Klein of the proposed modifications. Verizon distributed the disputed amendment notice according to the previously agreed upon method—via email. Such action supports a finding that Verizon provided proper notice of the proposed modifications. *Cf. DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 627-28 (Md. 2003) (holding a contract modification invalid where the service provider "failed to provide sufficient notice of the changes to the provisions" of the agreement at issue). Verizon not only provided notice but did so in the exact manner to which Klein agreed would be the proper (and thus presumably sufficient) method of

notice. Furthermore, Klein does not present, nor can the Court cite, Maryland case law in support of Klein's assertion that not having enough time to consider contract modifications is sufficient to declare terms unconscionable.

For these reasons, the Court holds the arbitration provision to be neither substantively nor procedurally unconscionable. Consequently, the Court orders that the arbitration clause is to be enforced. Accordingly, the Court grants Defendants' Motion to Compel Arbitration and directs the parties to submit this claim to arbitration within 60 days because the provision is valid and its scope covers the current dispute between parties.

## C. Motion to Dismiss for Failure to State a Claim

In light of the Court's ruling on the Motion to Compel and the aforementioned reasons, Verizon's Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) is denied as moot.

## IV. CONCLUSION

The Court denies Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. The Court holds that it retains subject matter over this action because a Rule 68 Offer of Judgment made little more than one month after Klein's filing of this class action does not automatically moot Klein's stake in the case.

The Court grants Defendants' Motion to Compel Arbitration and directs the parties to submit this claim to arbitration within sixty (60) days of the date of this Order because the provision is valid and its scope covers the current dispute between parties. The Court holds the Verizon contract modifications here are valid because assent by continued use of services after notice of the contract modification was explicitly contemplated by the parties' initial agreements, the language of the agreements demonstrate intent to apply the modifications retroactively, and

22

the arbitration clause is valid and enforceable. As a result, Defendants' 12(b)(6) Motion to Dismiss is denied as moot. For these reasons, it is hereby

**ORDERED** that Defendants' Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss (Dkt. No. 11) is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that Defendants' Motion to Dismiss for a lack of subject matter jurisdiction is **DENIED**. It is further

**ORDERED** that Defendants' Motion to Compel Arbitration is **GRANTED**. It is further

**ORDERED** that the parties submit this claim to arbitration within sixty (60) days of the date of this Order. It is further

**ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim is **DENIED** as moot. It is further

**ORDERED** that this case is **STAYED** pending the resolution of the parties' arbitration. It is further

**ORDERED** that the Clerk shall remove this case from the active docket.

The Clerk is directed to forward a copy of this Order to counsel.

**IT IS SO ORDERED.**

Entered this _____ day of January, 2013.

/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, VA
1 /___/ 2013